IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Juan Carlos Vazquez, #351021, | ) | Civil Action No.:2:15-cv-04475-BHH-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Warden Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

The Petitioner, a state prisoner proceeding *pro se*, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 18; *see also* Dkt. No. 17.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner filed the instant action on October 29, 2015. (Dkt. No. 1 at 15 of 15; Dkt. No. 1-4 at 2 of 2.) On March 4, 2016, Respondent filed a Motion for Summary Judgment. (Dkt. No. 18; *see also* Dkt. No. 17.) By order filed March 4, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 19.) On March 7, 2016, Petitioner filed a Motion to Compel; shortly thereafter, he filed a Motion to Stay. (Dkt. No. 21; Dkt. No. 22.) Respondent filed Responses in Opposition to both the Motion to Compel and the Motion to Stay, to which Petitioner filed Replies. (Dkt. No. 23; Dkt. No. 24; *see also* Dkt. No. 25; Dkt. No. 26.) In an Order dated October 31, 2016, the undersigned denied Petitioner's Motion to Compel and Motion to Stay and gave Petitioner through December 1, 2016 to file his Response to the Motion for Summary Judgment. (Dkt. No. 33.) Petitioner filed a Response in Opposition to the Motion for Summary Judgment on or about December 1, 2016. (Dkt. No. 38.) For the reasons set forth herein, the undersigned recommends granting Respondent's Motion for Summary Judgment (Dkt. No. 18.)

1

## PROCEDURAL HISTORY

The Petitioner is currently confined within the South Carolina Department of Corrections ("SCDC") at McCormick Correctional Institution. In May of 2009, the Spartanburg County Grand Jury indicted Petitioner for trafficking in cocaine and possession with intent to distribute marijuana. (R. at 156-59.) In May of 2010, the Spartanburg County Grand Jury indicted Petitioner for two counts of accessory before the fact to felony murder and one count of accessory before the fact to felony burglary-first degree. (R. at 160-62.) Petitioner was represented by Hunter Chase Harbin, Esquire. (*See* R. at 1.) On July 12, 2010, Petitioner pled guilty to all five charges before the Honorable J. Derham Cole. (R. at 1-35.) Sentencing was deferred to a later date. (*See* R. at 32.) On May 23, 2012, the Honorable J. Mark Hayes, II sentenced Petitioner to life in prison on each of the convictions for accessory before the fact of burglary in the first degree and accessory before the fact to murder; Judge Hayes also sentenced Petitioner to thirty years on the conviction for trafficking in cocaine and five years on the conviction for possession with intent to distribute; those sentences were set to run concurrent to Petitioner's life sentences. (*See* R. at 36-68.)[1]

Petitioner did not file a direct appeal, but he filed an application for post-conviction relief ("PCR") on February 4, 2013. (R. at 69-82.) The following question and answer appeared in his PCR application:

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> (a) Ineffective Assistance of Counsel
> (b) Prosecutorial Misconduct
> (c) Guilty plea "was not" voluntarily or intelligently made

(R. at 71.) Petitioner asserted (verbatim),

> Mr. Harbin acts and or omissions including but not limited to prejudiced me when he failed to properly research and investigate the facts and laws surrounding the entitlement of my case.

---

[1]It appears that Mr. Harbin filed a Motion to Reconsider Sentence on behalf of Petitioner on June 4, 2012, but that motion was denied. (*See* Dkt. No. 17-6 at 27-29 of 32; *see also* R. at 147.)

2

. . .

The prosecution failed to disclose exculpatory, favorable and or impeachment evidence to me. . . .

Including but not limited all the above grounds my guilty plea was not voluntarily or intelligently made. And, if it was not for the above grounds–including but not limited to–I would not have pled guilty but would have insisted on going to trial. . . .

(R. at 77-79.)

On November 3, 2014, an evidentiary hearing was held before the Honorable R. Keith Kelly. (R. at 90-145.) Petitioner was present and represented by Brandt Rucker, Esquire. (*See* R. at 90.) In an order filed on December 2, 2014, Judge Kelly denied the application for post-conviction relief and dismissed the petition. (R. at 146-55.)

Petitioner appealed, and on June 25, 2015, through Attorney Benjamin John Tripp of the South Carolina Commission on Indigent Defense, he filed a *Johnson* Petition for Writ of Certiorari. (Dkt. No. 17-4.)[2] Therein, Petitioner raised the following issue:

Whether the evidence in the record supports the PCR court's conclusion that Petitioner knowingly and voluntarily pled guilty merely because Petitioner participated in a routine guilty plea hearing when he could not understand English.

(Dkt. No. 17-4 at 3 of 10.) Mr. Tripp also filed a petition to be relieved as counsel. (Dkt. No. 17-4 at 9 of 10.) Petitioner filed a *pro se* response to the *Johnson* petition, wherein he raised the following issue (verbatim): "Whether the P.C.R. court errored in ruling that counsel was not ineffective and Petitioner's guilty plea(s) was knowing, voluntarily and intelligently made." (*See* Dkt. No. 17-6 at 3 of 32.)

In an order dated September 23, 2015, the Supreme Court of South Carolina denied the petition for a writ of certiorari and granted counsel's request to withdraw. (Dkt. No. 17-7.) The matter was remitted to the lower court on October 14, 2015. (Dkt. No. 17-8.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review:

---

[2]*See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

**Ground One**: Ineffective assistance of counsel/guilty plea was not knowingly, voluntarily and intelligently made.

**Ground Two**: Prosecutorial Misconduct.

(Dkt. No. 1 at 5-7 of 15.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

4

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 18; *see also* Dkt. No. 17.) The undersigned addresses Petitioner's grounds for relief in turn.

## A.    Ground One

Petitioner contends in Ground One that his counsel was ineffective and that his guilty plea was not knowingly, intelligently, and voluntarily made. (*See* Dkt. No. 1 at 5 of 15.) Petitioner asserts that he had problems communicating with counsel due to a language barrier and that he "did not even know to which offenses he was pleading guilty . . . and did not know the elements as well." (Dkt. No. 1-1 at 1 of 26.) Petitioner points to his PCR testimony that he "was only following what his counsel had told him," and "that was the reason[] he did not tell the judge that he wanted to go to trial." (*Id*. at 4 of 26.) Petitioner further contends that his guilty plea was involuntary because "there was not enough research done," he had "only seen counsel about 4 times," and he "had not seen the DISCOVERY yet." (*Id*. at 5-6 of 26.) Petitioner states, "[A]lthough the State alleged that Petitioner was in phone contact . . . with his alleged co-defendants[,] [w]hich counsel tried to confirm[,] . . . counsel also testified that he did not have any substantive recordings of what was said or phone records." (*Id*. at 9 of 26.) Petitioner also contends that he told counsel that his "statement was involuntarily made because he had asked for an attorney 4 or 5 times before he gave statements to the police but he was not provided an attorney," but "counsel did not say anything." (*Id*. at 10 of 26.) Petitioner further asserts that he "informed counsel that he had the money at the time to pay for an interpreter because the interpreter(s) they had or that he provided were just not working, but counsel

5

did not answer anything." (*Id.* at 11 of 26.) Petitioner also asserts counsel was ineffective, and his plea was involuntary, because "counsel never discussed he would be deported because of his guilty pleas." (*Id.* at 17 of 26.) In his § 2254 petition, Petitioner states,

> The above arguments clearly show[] that but for counsel['s] unprofessional errors [Petitioner] would not have plead [sic] guilty but would have insisted on going to trial. . . . Here there is no evidence of probative value to support the findings of the PCR court. . . .
>> (1) Where counsel admitted they had problems communicating[;]
>> (2) Where counsel admitted that he told Petitioner to plea and how to answer for the judge "yes" or "no" when he knew Petitioner wanted to go to trial[;]
>> (3) Where counsel never really had a legal reason per Strickland why he did not go to trial[;]
>> (4) Where counsel never explain[ed] the deportation issue to Petitioner[;]
>> (5) Where counsel admitted that he did not give Petitioner his discovery in a timely manner to help his own defense[;]
>> (6) Where the atty/counsel did not even have Petitioner's alleged co-defendants['] statements nor Petitioner's and or said alleged co-defendants['] phone records[; and]
>> (7) Where counsel never challenge[d] Petitioner's statement where counsel knew Petitioner had told him that his statement was involuntar[ily] made[.]

(Dkt. No. 1-1 at 18-20 of 26.)

The PCR court addressed Petitioner's claim that his counsel was ineffective and his guilty plea was involuntary. (*See* R. at 148-53.) The PCR court noted the testimony of Petitioner and his counsel:

> The Applicant testified that he had problems communicating with Counsel and felt that there had not been enough research done on his case. Applicant acknowledged that he cooperated with the State and provided statements to police before retaining Counsel to represent him. However, Applicant testified that he requested an attorney several times while giving his statements and explained that to Counsel. Additionally, Applicant informed Counsel that he had trouble understanding the Officer who interpreted for the Sheriff's office. Applicant also testified that he has seen copies of his statements, but he does not believe that he signed that number of forms.
> Applicant testified that he retained Counsel approximately one and a half years prior to the plea. Applicant testified that he met with Counsel four times for brief meetings lasting maybe 20 minutes each and Applicant wanted more time to

review the case with Counsel. Applicant testified that Counsel had an interpreter with him each time they met, but Applicant felt that he needed a better interpreter. Applicant testified that Counsel never discussed how this plea may affect his residency in the United States.

Applicant testified that Counsel never explained any of the elements of the charges that Applicant was pleading guilty to or the potential sentences. Applicant testified that he did not understand the charge of accessory before the fact and wanted to go to trial. However, Applicant acknowledged that he believed he would get less time because the charge was not murder. Applicant testified that he never received any discovery materials before his plea, but did receive copies of materials following his plea in November 2012. However, Applicant testified that the statements from his co-defendants, Cortez and Lopez, were not included in the materials he received.

Counsel testified that he was retained one and a half years prior to the plea. Counsel testified that the case revolved around missing money that Applicant believed the victims had taken from him through drug transactions and the fact that Applicant had contacted someone to come and get the money from the victims. The victims ended up being tortured and killed by several men who arrived from Atlanta. Counsel testified that the allegation was that the Applicant was the one who essentially hired hit men. Counsel testified that he talked with the Applicant about his <u>Miranda</u> rights and whether or not they could challenge Applicant's statements. Counsel testified that he also discussed the charges, elements of the charges, and potential sentences with the Applicant. Counsel testified that the Applicant always told him that he did not want the victims killed or know that they would be killed. However, Counsel testified that he believed Applicant would at least be found guilty of accessory to burglary–1st degree, even based on Applicant's statements, which still was a potential life sentence. Counsel testified that he discussed with the Applicant that the best option of receiving less than a life sentence was to fully cooperation [sic] and plead guilty to those lesser charges in hopes of consideration as to the sentence.

Counsel acknowledged that he did not give a copy of discovery materials to the Applicant while he was in the local detention center because Counsel's policy was to review it with [the] client and not leave [a] copy because of the risk of jail house snitches. Counsel testified that he reviewed all of the co-defendant's statements with the Applicant prior to the plea, as well as pictures and phone records showing phone calls between other co-defendants. Counsel acknowledged that the statements of Cortez and Arevalos were not in his file at the present, but Counsel testified that he specifically recalled reviewing each of the co-defendant's statements with the Applicant.

Counsel testified that he did discuss with Applicant the consequences of the plea as it related to potential deportation risks. Counsel testified that the Applicant never indicated to Counsel that he was having problems with the interpreters prior to the plea or at the plea. Applicant never asked Counsel to hire another interpreter. Counsel testified that he never had a question if the Applicant was pleading guilty freely and voluntarily and believed that Applicant was pleading guilty with the hope of receiving a lesser sentence.

(R. at 149-51.)

The PCR court found the testimony of counsel "to be more credible than the testimony" of Petitioner. (R. at 151.) The PCR court stated,

> This Court finds the testimony of Counsel to be more credible than the testimony of the Applicant. This Court finds no merit to the claim that Counsel was ineffective for failing to obtain another interpreter. There is no appearance of misunderstanding with the interpreter and as the record reflects, the Applicant answered appropriately to [the] plea judge at his plea on July 12, 2010, as well as at the sentencing hearing on May 12, 2012. In fact, the Applicant was instructed to ask for the proceedings to stop if he ever had trouble understanding. (Plea Tr. p. 7; p. 10). The plea judge also asked Applicant if he had any difficulty with his interpreter and Applicant indicated he did not. (Plea Tr. p. 23). At the plea, Judge Cole explained each charge Applicant was pleading guilty to and the possible penalties he faced. (Plea Tr. p. 18-20). Applicant's own testimony at the plea indicates that he discussed the charges and potential sentences. (Plea Tr. p. 15; p. 18; p. 20)[.]
>
> This Court also finds that the allegation that Counsel failed to properly research and investigate the case is without merit. Counsel's testimony was credible and the record reflects that Counsel investigated [the] case as well as reviewed the facts and discovery materials with the Applicant. (Plea Tr. p. 30-1). Counsel's articulated strategy was reasonable under the circumstances and facts of this case. This Court finds that the Applicant has failed to meet his burden of proof as to this claim [of ineffective assistance of counsel]. Therefore, it is denied and dismissed.

(R. at 151-52.)

The PCR court separately addressed Petitioner's claim of involuntary guilty plea as follows:

> To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Dover v. State, 304 S.C. 433, 405 S.E.2d 391 (1991). In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing. Harris v. Leeke, 282 S.C. 131, 318 S.E.2d 360 (1984).
>
> Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents valid reasons why he should be allowed to depart from the truth of his statements. Crawford v. U.S., 519 F.2d 317 (4th Cir. 1975); Edmonds v. Lewis, 549 F.2d 566 (4th Cir. 1976).
>
> A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a

reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial. <u>Roscoe v. State</u>, 345 S.C. 16, 546 S.E.2d 417 (2001); <u>Richardson v. State</u>, 310 S.C. 360, 426 S.E.2d 795 (1993).

This Court finds that Applicant's claim of involuntary guilty plea is without merit. As indicated previously, the Applicant appeared not only at the guilty plea but also 22 months later at the sentencing before a different judge and answered appropriately to the Court's inquiry at each hearing. Further, the transcript reflects that the guilty plea was knowingly and voluntarily entered with a full understanding of the charges and consequences of the plea. Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, an Applicant's right to contest the validity of such a plea is usually, but not invariably, foreclosed. <u>Blackledge v. Allison</u>, 431 U.S. 63, 97 S.Ct. 1621 (1977). Statements made during a guilty plea should be considered conclusively, unless an Applicant presents valid reasons why he should be allowed to depart from the truth of his statements. <u>Crawford v. U.S.</u>, 519 F.2d 347 (4th Cir. 1975) overruled on other grounds by <u>U.S. v. Whitley</u>, 759 F.2d 327 (4th Cir. 1985). This Court finds that the Applicant presented no reasons to show that he should be allowed to depart from the truth of the statements he made during his guilty plea or sentencing hearing and finds Applicant knowingly, intelligently, and voluntarily accepted the plea. Therefore, this claim is denied and dismissed.

(R. at 152-53.)

The undersigned recommends granting summary judgment to Respondent as to Ground One. The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985).

In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id*. While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The two-part test enunciated in *Strickland* applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Having carefully reviewed the record in the case *sub judice*, the undersigned concludes Petitioner is not entitled to habeas relief as to Ground One. As noted above, Petitioner pled guilty before the Honorable J. Derham Cole on July 12, 2010. (*See* R. at 1-35.) Ms. Ruby Stephens, who was over the age of eighteen and was on "an approved list with court administration for providing interpreting services" in that court, served as the interpreter during the plea hearing. (*See* R. at 5-7.) The judge inquired as follows:

> THE COURT: And have you had conversations with [Petitioner]?
>
> THE INTERPRETER: This morning with his lawyer.
>
> THE COURT: And do you perceive any difficulties in translation or in understanding the language that [Petitioner] speaks?
>
> THE INTERPRETER: As long as he enunciates, no.
>
> THE COURT: All right. There are no dialects, difficulties or problems?
>
> THE INTERPRETER: None that cannot be resolved, no.

10

> THE COURT: All right. Ms. Stephens, let me ask you to inform [Petitioner] that if at any time during the course of this process he has any difficulty whatsoever in understanding a question or your interpretation to let me know and let you know so that we can address any difficulty we might have.
>
> Do you understand that, Mr. Vasquez?
>
> THE DEFENDANT: Yes, sir.

(R. at 6-7.)

Petitioner indicated he had plenty of time to talk with counsel about the charges as well as his decision to plead guilty. (R. at 8.) Petitioner stated that counsel had explained what the State would have to prove before he could be found guilty of accessory before the fact to murder, accessory before the fact to burglary in the first degree, trafficking in cocaine, and possession with intent to distribute marijuana. (R. at 8-9.) When asked if counsel explained the potential sentences that could be imposed on Petitioner for each of the convictions, Petitioner responded, "Yes." (R. at 9.) The following exchange also occurred during Petitioner's plea:

> THE COURT: Did you and [counsel] discuss whether or not you had a defense to any of the charges?
>
> THE INTERPRETER: What do you mean? I don't understand.
>
> THE COURT: Did you and he discuss whether or not you have any reason whatsoever why you should not be found guilty of any of these charges?
>
> THE INTERPRETER: Yes.
>
> THE COURT: And do you know of any reason [t]hat you should be found not guilty of any charge?
>
> THE INTERPRETER: Yes.
>
> THE COURT: And what reason do you have why you should be found not guilty, and to which charge?
>
> THE INTERPRETER: That's why I'm declaring myself guilty, because I cannot prove it.
>
> MR. HARBIN: I believe he misunderstood your question a bit, Your Honor.

THE COURT: Well, suffice it to say, that would be accurate.

My question is–listen carefully to my question. My question is do you know of any reason why you should be found not guilty.

THE INTERPRETER: No.

(R. at 9-10.)

The plea judge went over the at-issue indictments and the possible penalties for those charges; Petitioner indicated he understood. (R. at 10-14.) The judge went over the rights that Petitioner was waiving by pleading guilty; Petitioner indicated he understood those rights and wished to give those rights up in order to plead guilty. (R. at 14-18.)  Petitioner stated that he understood the significance of certain offenses being classified as violent and serious. (R. at 18-19.) He stated that he understood that accessory before the fact to murder and trafficking in cocaine are both no-parole offenses. (R. at 19-20.) Petitioner indicated that no one had promised him anything or threatened him in order to make him plead guilty. (R. at 20.) Additionally, the following exchange occurred during the plea colloquy:

THE COURT: Has anyone placed any kind of pressure upon you that caused you to arrive at your decision to plead guilty?

THE DEFENDANT: No.

THE INTERPRETER: No. It's my own decision.

THE COURT: Are you pleading guilty freely, intelligently and voluntarily?

THE INTERPRETER: Yes, sir.

THE COURT: And as you have indicated, it is your decision, and yours alone?

THE DEFENDANT: Yes.

THE INTERPRETER: Yes, sir.

THE COURT: You heard me and understood me reading the allegations contained in the indictments?

THE DEFENDANT: Yes, sir.

THE INTERPRETER: Yes, sir.

THE COURT: Are you pleading guilty because you committed each of the crimes as they are described in each of the separate indictments?

THE DEFENDANT: Yes, sir.

THE INTERPRETER: Yes, sir.

(R. at 20-21.)

Although Petitioner stated that he did not speak English, he also stated that he had no difficulty in communicating through the interpreter. (R. at 23.) After the solicitor reviewed the facts of the case, the judge asked whether Petitioner agreed or disagreed with the facts as stated by the solicitor. (R. at 23-28.) Petitioner stated, "It's all correct." (R. at 28.) Petitioner answered Judge Cole's questions appropriately. For example, when Judge Cole asked Petitioner how long Mr. Harbin had been representing him with respect to the charges, Petitioner stated, "From the moment that they detained me." (R. at 7-8.) When asked when that was, Petitioner responded with January 31, 2009. (R. at 8.) When Petitioner did not understand something, he asked for clarification, and that clarification was provided. (*See* R. at 9-10, 33.)

Sentencing was deferred until May 23, 2012. (R. at 32, 36-68.) At this hearing, an interpreter named Teresa Sampson assisted Petitioner. (R. at 37.) During this hearing, Petitioner answered the judge's questions appropriately; for example, when asked how far he went in school, Petitioner stated, "Middle school." (R. at 44.) When asked if he had children, Petitioner said "two," and when asked how old they are, Petitioner said, "Thirteen and ten." (R. at 44.)

The following facts–to which Petitioner agreed–were reviewed during the sentencing proceeding:

THE COURT: And now we'll have Mr. Juan Carlos Vasquez.

MR. BARNETTE: Yes, sir, he was the one that made the phone call to Yesenity Cortez-Ramirez, Your Honor, to ask them to come up from Atlanta, supposedly Hugo Hernandez owed him a great deal a [sic] money in this case, and asked for help from her in this case where she brought help with her and led to what occurred from there,

13

Your Honor. He met them, they went over to the trailer which is where Jose lived at, Your Honor, and his involvement was he was originally the one that called to ask for them to come here.

THE COURT: Yes, sir, Mr. Harbin.

MR. HARBIN: Judge, may it please the Court. Let's start off by tryin' to add a little bit to what Solicitor Barnette has . . . told ya and it was kinda confusin' to me at the start and then I realized there's a little bitta cultural boundaries. He began by describing Ms. Yesenia as a psychic essentially and that he was going to her for some sort of advice or Tarot card reading, that kinda thing. Ms.–is it Cortez, Mr. Barnette, Ms. Ms. Cortez?

MR. BARNETTE: Cortez-Ramirez.

MR. HARBIN: That Ms. Ms. Cortez-Ramirez proceeded to tell him that or confirm rather a suspicion that he had that that Hugo[, one of the victims,] had been withholding money or had owed him money or had stolen either money and/or drugs from from my client and as you've seen before he's pleading guilty to trafficking. Mr. Hugo was essentially work[ing] underneath my client so they had essentially a monetary dispute of some sort or he was embezzling or that he owed him money in one form or another. After consulting with Ms. Cortez, she, according to my client she volunteered I can get X, Y and Z together, I can gather this group to solve your problem. Of course the arrangement I believe was some kind of contingency fee: If we got some a your money, you'd give us some of the money for getting it. He wants to make clear to the Court that Hugo was a friend of his, a friend of his like he would go, and I believe the family has alluded to this, they would barbecue together, I mean, they had a social relationship and in part that social relationship was why he chose to have a third party intervene because he didn't want at first he tells me . . . to believe that Hugo took anything from him, that he was being dishonest in any way as it relates to their business dealings and he wants to make it further clear that he had no intention and regrets to this day that they were hurt, much less killed, that that was not his intention. Mr. Barnette and I have spoken before and essentially what his intention was was to get a third party to go and shake him down for the money. He he he couldn't get the money for himself, he couldn't bring himself to confront Hugo about the money that he owed him and he chose extremely poorly in the folks that he had, that he employed to do that.

Judge, I wanna point out to the Court that my client along with Mr. Jose Reyes were the first folks to plea and I believe that certainly has a domino effect that I believe the solicitor would . . . acknowledge. Judge, when I explained these circumstances to my client and how the law worked an and explained to him why, you know, he is charged with murder even though he's not alleged to have been involved in the shooting directly, he acknowledged immediately of course he is a conspirator to burglary and then you're responsible as the hand of one, hand of all or accomplice liability, whatever the Court would like to term it, for whatever happens

14

in the commission of that crime. Judge, he understands that he is responsible for that no matter his intention but he does wanna make sure the Court knows that he's very, very sorry that anything like this–like this happened and he didn't intend for that to happen at all.

Judge, I . . . won't, I won't take up anymore a your time 'cause I know he wanted to address the Court directly but but he did want the family to know that he is extremely sorry that the folks he chose to do business with took it to this level, he never intended that to happen.

THE COURT: And, Carlos, do you agree with everything that your lawyer just stated?

THE INTERPRETER: Yes.

THE COURT: Sir, is there anything that you would like to say or want me to know or consider?

THE INTERPRETER: Yes. I just want to clear up that it was never my intention for these people to be murdered, they were very good friends of mine. The intention was just to talk to 'em so they can't–so they would return the money, that was it. We were such good friends and with Teresa, also I didn't wanna have any problems with them. It was, it was not my intention and I never thought I would be involved in a problem like this. To Hugo and Teresa's family, I apologize for everything that happened, my intention was never to have them murdered.

(R. at 54-57.) Petitioner agreed to the facts as stated by the solicitor and his attorney. (R. at 58.)

The PCR court's rejection of Petitioner's claim of ineffective assistance of counsel, and corresponding conclusion that his guilty plea was voluntary, is not contrary to, or an unreasonable application of, clearly established federal law; nor did the adjudication result in an unreasonable determination of the facts. Petitioner testified at his PCR hearing that he "had problems communicating with [his] attorney, Mr. Harbin." (R. at 98.) Petitioner testified that he saw counsel only four times, but he also testified that counsel brought an interpreter with him each time he met with Petitioner. (R. at 102-03.) During cross-examination, Petitioner admitted that when the judge asked if anyone threatened him or put any pressure on him, and he said no, it was his own decision, "[t]hat was a lie." (R. at 115.) On the other hand, counsel testified that Petitioner never expressed any concerns with the interpreters counsel brought with him to their meetings. (R. at 119.) He testified

that from his conversations with Petitioner and the interpreter, he was "very comfortable" in concluding Petitioner was pleading freely and voluntarily. (R. at 124.)

The PCR court found the testimony of counsel "to be more credible than the testimony of the" Petitioner. (R. at 151.) Counsel testified that he brought an interpreter to all of his meetings with Petitioner (save one short meeting), and that Petitioner never voiced any concerns with those interpreters. (R. at 119-20.) Counsel testified that he went over the discovery with Petitioner but that he did not give Petitioner a physical copy of the discovery because Petitioner was in jail, and "snitches kind of appear out of nowhere" and "if you have to leave your cell, your papers are unguarded." (R. at 122, 125, 143.) Counsel testified that although he did not have the co-defendants' statements in his file, he did go over them with Petitioner. (R. at 125-30.) He testified that although there were no recordings of phone calls between Petitioner and his co-defendants, the police "had a considerable amount of telephone records bouncing–you know, telephone calls bouncing off particular towers at particular times from particular numbers." (R. at 134.) Counsel testified that police tied Petitioner to the burglary and murders through Petitioner's friend and co-worker Mr. Reyes, who "actually rode with the–the crew, the hitmen crew or whatever it was." (R. at 134.)

He testified that he discussed deportation with Petitioner. (R. at 130.) He testified that he believed it was in Petitioner's best interest to plead guilty because "his defense would have been to admit guilt," and counsel "believe[d Petitioner] would have ended up being legally held responsible for actions [his co-defendants] did over and above what he had intended originally to do." (R. at 133-34.) Counsel stated, "So it would have been a win a battle/lose a war situation had we taken it and gone to trial." (R. at 134.) Counsel testified that Petitioner acknowledged he waived his *Miranda* rights but indicated that at some point in the conversation, he asked for an attorney; counsel stated, "And that would be an issue certainly we could have brought up at trial. But in the–in the due course of consideration of all the facts and–and evidence as it was, it was my advice to–to eventually to plead guilty certainly." (R. at 120.)

According to counsel, given the facts Petitioner admitted in planning the attempt to get his money back from the victims, counsel was "not really sure how the jury would have had any–any ability to find him not guilty of at least . . . the conspiracy to conduct burglary for a lack of a better–or more sophisticated term, accessory before the fact certainly, the same–I believe legally the same thing," which would not have gotten Petitioner any closer to "a better guaranteed sentence or a better outcome." (R. at 137-38; *see also* R. at 122-23.)[3]

As noted above, the PCR court found the testimony of counsel "to be more credible than the testimony of the" Petitioner. (R. at 151.) Such a factual finding on credibility is "presumed to be correct"; Petitioner has the "burden of rebutting the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003). Petitioner has not met his burden to rebut that presumption. As detailed above, Petitioner responded appropriately to questions posed by both Judge Cole and Judge Hayes. When he did not understand, he said so, and clarification was provided. Although Petitioner's testimony at the PCR hearing was different from counsel's testimony, and Petitioner disputes some of these factual findings, (*see* Dkt. No. 38 at 5 of 11),[4] this fact does not warrant federal habeas relief. *See Wilson*, 352 F.3d at 860 ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination."); *see also Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("A state court's

---

[3]Both accessory before the fact to murder and accessory before the fact to burglary in the first degree carried a potential life sentence. (*See* R. at 10-12.)

[4]Petitioner asserts that he "repeatedly asked his PCR counsel to obtain the statements from co-defendants and phone records so that, in case such as the present that the PCR court did not accept Petitioner's claims, the truth could be proven by clear and convincing evidence, but PCR counsel failed the Petitioner." (Dkt. No. 38 at 7 of 11.) Petitioner cites *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), and contends that he has shown "ample cause for the default." (Dkt. No. 38 at 7-8 of 11.) *Martinez* is of no assistance to Petitioner, however, as this case does not involve procedural default. *See Gray v. Zook*, 806 F.3d 783, 789 (4th Cir. 2015) ("First, *Martinez* permits a petitioner to excuse certain procedurally defaulted ineffective-assistance-of-trial-counsel claims. But if claims are not procedurally defaulted—that is, they were properly presented to the state court—then *Martinez* does not apply."); *Gore v. Crews*, 720 F.3d 811, 817 (11th Cir. 2013) ("Because Gore's claim is not procedurally barred . . . , *Martinez* by its own terms does not, and cannot, excuse his failure to satisfy the exhaustion requirement of § 2254(b)."); *cf. Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("hold[ing] that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004))); *Doe v. Woodford*, 508 F.3d 563, 572 (9th Cir. 2007) (rejecting involuntary plea argument where the petitioner "participated in a thorough plea colloquy, in which he answered in the affirmative that his plea was voluntary under the circumstances and, specifically answered in the affirmative when asked if he had had enough time to discuss the plea with his attorneys"); *United States v. Solomon*, 106 F. App'x 170, 171 (4th Cir. 2004); *United States v. Robinson*, 82 F. App'x 322, 323 (4th Cir. 2003) ("Robinson's plea colloquy reveals that his plea was knowingly and voluntarily entered into."); *United States v. DeFusco*, 949 F.2d 114, 119-20 (4th Cir. 1991). The undersigned recommends granting summary judgment as to Ground One.

## B.     Ground Two

In Ground Two, Petitioner asserts he is entitled to relief due to "prosecutorial misconduct." (Dkt. No. 1 at 7 of 15.) Petitioner states,

> The State suppressed Petitioner's phone records SEE: App. p24-L23-p25-L10 and Petitioner's Co-Defendants['] statements App. p 27L13-P29-L6 Or never had this alleged evidence, in the first place.

(*Id*.)

The PCR court addressed this claim as follows:

> In regards to the claim of prosecutorial misconduct, this Court finds that the Applicant failed to meet his burden of proof. Applicant failed to offer any evidence or testimony that the prosecutor suppressed evidence that would have been favorable to him. Therefore, this claim is denied and dismissed.

(R. at 153-54.)

The undersigned recommends granting summary judgment to Respondent as to Ground Two. Petitioner contends that the "State suppressed" relevant phone records as well as the statements of Petitioner's co-defendants. (Dkt. No. 1 at 7 of 15.) The PCR court specifically found the testimony of counsel "to be more credible than the testimony of the" Petitioner. (R. at 151.) That court also specifically found that counsel "investigated the case as well as reviewed the facts and discovery

materials with" Petitioner. (R. at 152.) Counsel testified at the PCR hearing that the phone records connected Petitioner to the crimes and that he reviewed the statements of Petitioner's co-defendants with Petitioner. (R. at 125-30, 134.)[5] In light of the foregoing, the state court's rejection of the claim of prosecutorial misconduct was not contrary to, or an unreasonable application of, clearly established federal law; nor did the adjudication result in an unreasonable determination of the facts.[6] The undersigned recommends granting summary judgment to Respondent as to Ground Two.

---

[5]Petitioner's claim that the *State* suppressed evidence also fails because, as noted by the PCR court, Petitioner did not present any evidence at his PCR hearing that the *State* suppressed any evidence at all. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *see also Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (concluding the petitioner's claim that other evidence should have been presented during the sentencing phase of his trial failed in "the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called," stating, "He claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify.").

[6]As with Ground One, Petitioner cites *Martinez v. Ryan* and asserts that "[i]t is of no final consequence that the PCR court rejected this claim since it is subject to being proven or disproved as the result of this Court's findings after a *Martinez* hearing." (Dkt. No. 38 at 8-9 of 11.) As explained above, however, *Martinez* is of no assistance to Petitioner, as his claims are not procedurally defaulted. *See supra* n.4. Additionally, *Martinez* provides no assistance to Petitioner with respect to Ground Two because Ground Two is not a claim of ineffective assistance of counsel. *See Gore*, 720 F.3d at 817 ("Because Gore's claim is not procedurally barred and it does not raise an allegation of ineffective assistance of trial counsel, *Martinez* by its own terms does not, and cannot, excuse his failure to satisfy the exhaustion requirement of § 2254(b).").

## **CONCLUSION**

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 18) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[7]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

December 12, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[7]Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.

28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).